**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Administrative Committee for the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Alice Salazar; Frank Lesselyong; and Kleinman, Lesselyong, Novak & Russell,<br><br>　　　　Defendants. | No. CV 06-1592-PHX-SMM<br><br>**ORDER** |

　　　　Pending before the Court are the parties' cross motions for summary judgments, filed by Plaintiff, the Administrative Committee of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan ("Wal-Mart")(Dkt. 44) and Defendants Alice Salazar; Frank Lesselyong; and Kleinman, Lesselyong, Novak & Russell ("Defendants"), pursuant to Fed. R. Civ. P. 56. (Dkt. 49).

　　　　Wal-Mart moves for partial summary judgment on its claim for reimbursement of $64,386.58 in medical expenses paid on behalf of Defendant Alice Salazar ("Defendant Salazar"). Plaintiff asserts that Wal-Mart is entitled to reimbursement for payments it made to certain of Defendant's medical providers in connection with a January 22, 2005, automobile collision in which Defendant was seriously injured.

Defendants assert that the Wrap Document that applies in the present case does not contain or incorporate the reimbursement provision that Wal-Mart relies upon in its reimbursement argument, and therefore, Wal-Mart has no claim. Consequently, Defendants move for summary judgment on all claims. Defendants further argue that even assuming the Plan did include a reimbursement provision, federal case law dictates that Wal-Mart is not entitled to reimbursement as a matter of law because Wal-Mart has not sought "appropriate equitable relief" under ERISA, 29 U.S.C. § 1132(a)(3). Moreover, in the event that the Court determines that the Plan includes a reimbursement provision, and that the provision is enforceable, Defendants argue that any such amount of reimbursement awarded to Wal-Mart should be reduced from the amount sought because Wal-Mart "inequitably" seeks to fully recover, while Defendant was "forced" to settle for less than the total value of her claim.

## UNDISPUTED FACTS

### A. Background

On January 22, 2005, Defendant Salazar was riding as a passenger in her sister's car when another car turned left in front of them, causing a collision. (Dkt. 50, ¶ 11).

The collision resulted in multiple fractures to Defendant Salazar, including her leg, back, arm, and hand, and she endured a lengthy hospital stay, multiple surgeries, and rehabilitation. Her leg injury resulted in the prognosis of lifetime use of a walker. (Dkt. 50, ¶ 13; report of orthopedic surgeon Naftaly Attias, MD, Exhibit D).

Defendant Salazar's orthopedic surgeon has authored a report opining that, as a result of the collision, she had forty percent (40%) whole body impairment. He also stated that she would likely need two hip replacement surgeries within the next 5-10 years, each at a cost of approximately $40,000 to $50,000. (Dkt. 50, ¶ 13; Exhibit D).

At the time of the collision, Defendant Salazar was a stocker at Wal-Mart, earning $8.88 per hour. Due to her injuries, it is unlikely that she will ever be able to work again. (Dkt. 50, ¶ 14).

Defendant Salazar incurred over $161,000 in medical expenses as a result of the collision. (Dkt. 50, ¶ 15).

Defendant Salazar settled the claims relating to the January 22, 2005 accident for $250,000.00. (Dkt. 50, Exhibit 1, ¶ 9 & 21; *see* also Defendants' Answer, ¶ 12).

The Administrative Committee for the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Committee") is vested with discretion, limited by statutory and case law, to resolve questions concerning the administration, interpretation, or application of the Plan. (Dkt. 46, p.2).

The Plan is covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA"). (Dkt. 46, p.1).

The only Plan terms that require and authorize the Plan to pay benefits are located in the Medical section of the Associates' Benefits Guide. (Dkt. 46, p.2).

The Plan paid a total of $64,386.58 in medical benefits on behalf of Defendant Salazar because of the injuries she sustained. (Dkt. 46, p.1; *see also* Defendants' Answer, ¶ 10).

The 2001 Wrap Document[1] does not contain a "Right to Reduction, Reimbursement and Subrogation" provision. However, the 2005 Wrap Document does contain a "Right to Reduction, Reimbursement and Subrogation" provision.

Defendants attempted to negotiate with Plaintiff for payment of a portion of Plaintiff's claimed right to reimbursement. Defendants did not agree to reimburse the Plan in the amount requested by the Plan. (Dkt. 50, ¶ 25-26; *see also* Affidavit of Frank M. Lesselyong).

Defendants are currently preserving $64,386.58 in settlement funds recovered as a result of the January 22, 2005 accident in an IOLTA Trust Account at National Bank of Arizona, controlled by attorney, Frank Lesselyong (Mr. Lesselyong). (Dkt. 17).

---

[1] The "Wrap Document" defines the Plan, as well as certain terms contained within the Plan, and incorporates by reference the Plan documents. (Dkt. 46, Exhibit 1).

- 3 -

According to Exhibit 2, attached to the affidavit of Teresa Todd, which Wal-Mart filed with its Statement of Facts, all but $2,780.79 of Wal-Mart's payments for medical benefits were for medical services that Defendant received *prior to June 1, 2005*, which is when the 2005 "Wrap Document" that Wal-Mart's lawsuit relies upon came into effect. (Dkt. 46, Exhibit 2); (Dkt. 46, Exhibit 1, p.1). At the time of the collision and at the time of nearly all of Defendant's paid-for medical services, the 2001 Wrap Document was in effect.[2] (Dkt. 49, p.4).

Defendant Salazar engaged Co-Defendant Mr. Lesselyong, a certified specialist in personal injury and wrongful death litigation, and his law firm, Co-Defendant Kleinman, Lesselyong, Novak & Russell to pursue her claim against the driver of the car. On behalf of Defendant Salazar, Mr. Lesselyong asserted a bodily injury claim against the negligent driver's insurer, Nationwide. (Dkt. 49, p.4). The limited liability insurance of the tortfeasor caused Defendant Salazar to settle for $250,000. No portion of that settlement was earmarked for past or future medical expenses. Defendant Salazar received no other recovery from third parties or any other insurer, nor does she have any prospect for doing so. (Dkt. 46, p.4).

Ultimately, the net payment to Defendant Salazar for her injuries was $140,959.94 once attorneys' fees and costs had been deducted. After the settlement was reached, Wal-Mart demanded reimbursement for the medical benefits it provided, but offered to settle for $31,000. (Dkt. 46, pp.4-5); (Dkt. 23, p.4). Defendants refused the offer, but as a precaution withheld that amount from Plaintiff's settlement in a trust account. (Dkt. 46, p.5). Plaintiffs then on June 22, 2006 motioned the Court for a Temporary Restraining Order and Preliminary Injunction seeking to enjoin Defendants from distributing the

---

[2] Plaintiff contends that, although the 2001 Wrap Document may have been in effect at the time of the collision and at the time of nearly all of Defendant's paid-for medical services, it is not the controlling document in this case. Instead, Plaintiff maintains that the 2005 Wrap Document, in effect at the time of Defendant Salazar's settlement, is controlling. (Dkt. 48, pp.4-5).

- 4 -

disputed amount of $64,386.58. (Dkt. 2).  This Court granted such motion on June 29, 2006 (Dkt. 17).  Pursuant to that Order, Mr. Lesselyong maintained $64,386.58 in a National Bank of Arizona IOLTA trust account to guard against the possibility of a court determining that Wal-Mart was entitled to reimbursement.

**B.     The Wrap Documents**

The 2001 Wrap Document defines "Plan" as follows:

> "**Plan**" means the Walmart Stores, Inc. Associates Health and Welfare Plan, as set forth herein, and each Welfare Program incorporated hereunder by reference, as amended from time to time. (Dkt. 50, Exhibit A, section 1.3(m)).

The 2001 Wrap Document defines "Welfare Program" as follows:

> "**Welfare Program"** means a written arrangement that is offered by one or more Employers and incorporated into this Plan by identification in Appendix A and which provides any employee benefit that would be treated as an "employee welfare benefit plan" under Section 3(1) of ERISA if offered separately. Welfare Program also means any plan established pursuant to Section 125 of the Code if incorporated herein by identification in Appendix A. For purposes of this Plan, only the terms of the formal plan document of each such arrangement is incorporated herein. Where no separate formal plan document exists, the plan document shall consist of any applicable insurance policy or contract and the applicable description of such benefits contained in the Associate Benefits Book, as modified from time to time, to the extent consistent with any applicable insurance policy or contract. (*Id.*, section 1.3(q)).

Appendix A to the 2001 Wrap Document states as follows:

> The following Welfare Programs are incorporated in the Plan by reference and shall be treated as comprising the Plan pursuant to Section 1.3 (q):
> -Wal-Mart Associates' Group Health Plan
> -Wal-Mart Associates' Dental Plan
> -Short-Term Disability Plan
> -Long-Term Disability Plan
> -Business Travel Accident
> -Accidental Death & Dismemberment (AD&D)
> -Company Paid Life
> -Optional Life
> -Dependent Life
> -Wal-Mart Stores, Inc. Flexible Benefit Plan
> -Associates Health and Welfare Trust. (*Id.*, Appendix A).

The SPD explains the impact of its provisions as follows:

> The Summary Plan Descriptions (SPDs) contained in this book explain the principal provisions of Wal-Mart's benefits in simple language. Please take the time to review each SPD to understand your benefits. ***If there is a disagreement between the SPD and the legal documents that define the benefits of these plans, the legal documents or applicable insurance policies will govern***. (Dkt.50, Exhibit H, p. 25) (emphasis added).

The Wrap Document, Amendment provision in section 6.1, provides, in relevant part:

> **6.1 Amendment**. The Plan is subject to amendment at any time without consent of the Participants. The procedure for amending the Plan, including the addition or deletion of a Welfare Program from Appendix A, shall consist of the Administrative Committee or its delegate submitting proposed Plan amendments to the Executive Committee of the Bard of Directors of the Company, receiving its approval, then communicating the amendments along with the effective date of such amendments to Participants. (*See* Exhibit A, section 6.1).

Plaintiff contends that the terms of the 2005 Wrap Document and the 2006 Associates' Benefits Guide, which contains the SPD, together govern Defendants' obligation to reimburse the Plan for benefits paid by the Plan as a result of Defendant's January 22, 2005 injuries because pursuant to the terms of the 2005 Wrap Document and the 2006 Associate Benefits Guide, "The right of reduction, reimbursement, and subrogation is based on the Plan language in effect at the time of judgment, payment, or settlement." (Dkt. 46, Exhibit 1, ¶ 10).

The 2005 Wrap Document and the 2006 Associates' Benefits Guide contain a "Right to Reduction, Reimbursement and Subrogation" provision which states:

> The Plan has the right to:
> • Reduce or deny benefits otherwise payable by the Plan, and
> • Recover or subrogate 100% of the benefits paid, or to be paid, by the Plan for covered persons, to the extent of any and all of the following payments:
>   – Any judgment, settlement, or payment made or to be made because of an accident or malpractice, including but not limited to other insurance
>   – Any auto or recreational vehicle insurance coverage or benefits, including but not limited
>   to uninsured/underinsured motorist coverage
>   – Business medical and/or liability insurance coverage or payments
>   – Attorney's fees

- 6 -

Note:
- The Plan has first priority with respect to its right to reduction, reimbursement, and subrogation.
- The Plan has the right to recover interest on the amount paid by the Plan because of the accident.
- The Plan has the right to 100% reimbursement in a lump sum.
- The Plan is not subject to any state laws, including but not limited to the common fund doctrine, which would purport to require the Plan to reduce its recovery by any portion of a covered person's attorney's fees and costs.
- The Plan is not responsible for the covered person's attorney's fees, expenses, or costs.
- The right of reduction, reimbursement, and subrogation is based on the Plan language in effect at the time of judgment, payment, or settlement.
- The Plan's right to reduction, reimbursement, and subrogation applies to any funds recovered from another party, by or on behalf of the estate of any covered person.
- The Plan's right to first priority shall not be reduced due to the participant's own negligence. Cooperation Required.

The Plan requires you, your dependents, and your representatives to cooperate in order to guarantee reimbursement to the Plan from third party benefits. Failure to comply with this request will entitle the Plan to withhold benefits due to you or your dependents under the Plan. You, your dependents, and/or your representatives cannot do anything to hinder reimbursement of overpayment to the Plan after benefits have been accepted by you, your dependents, and/or your representatives. These rights apply regardless of whether such payments are designated as payment for, but not limited to:

- Pain and suffering, or
- Medical benefits.

**This applies regardless of whether you or your dependents have been fully compensated for injuries.**

Additionally, the Plan has the right to file suit on your behalf for the condition related to the medical expenses in order to recover benefits paid or to be paid by the Plan.
Participant's Responsibility Regarding Right of Reduction and/or Recovery to aid the Plan in its enforcement of its right of reduction, recovery, reimbursement, and subrogation, you and your representative must, at the Plan's request and at its discretion:

- Take any action,
- Give information, and
- Sign documents so required by the Plan.

Failure to aid the Plan and to comply with such requests may result in the Plan's withholding or recovering benefits, services, payments, or credits due or paid under the Plan. The Plan's right to reimbursement applies when the Plan pays medical benefits, and a judgment, payment, or settlement is made on behalf of the covered person for whom the medical benefits were paid.

1
2

> Reimbursement to the Plan of 100% of these charges shall be made at the time the payment is received by you, your dependent(s), or your representative. (Dkt. 46, pp.3-5)..

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

- 8 -

Where the decision to grant or deny ERISA benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply. *Bendixen v. Standard Ins. Co.*, 185 F.3d 939 (9th Cir. 1999) citing 29 U.S.C.A. § 1132(a)(1)(B); Fed. Rules Civ. Pro. Rule 56(c), 28 U.S.C.A  Where an ERISA plan vests an administrator with discretionary authority to determine eligibility for benefits, a district court may review administrator's determinations only for abuse of discretion. *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469 (th 1993), citing, 29 U.S.C.A. §§ 1001-1461. A plan administrator exercises an abuse of discretion if he or she relies on clearly erroneous findings of fact in making benefit determinations. *Taft*, 9 F.3d at 1473.

**DISCUSSION**

**I.     The Wrap Documents**

Wal-Mart's claim for reimbursement relies on the premise that the Wrap Documents, whichever is in effect, and Associates Benefits Guide, containing the SPD, together set forth the rights and obligations of the Plan and its beneficiaries, including reimbursement rights and obligations.  (Dkt. 48, pp.2,6).  Where the plan administrator offers a reasonable interpretation of the plan and that decision was made in good faith, it should be upheld. *Estate of Shockley v. Alyeska Pipeline Service Co.*, 130 F.3d 403, 405 (9th Cir. 1997) quoting *MacDonald v. Pan American World Airways, Inc.*, 859 F.2d 742, 744 (9th Cir. 1988). Based on applicable case law, the administrator's decision to consider the Wrap Document along with the Associates' Benefits Guide, containing the SPD, as constituting the Plan is reasonable.

Defendants[3] counter that the Wrap Document is controlling where it is more favorable to the employee than the SPD because the drafters should bear the burden of poor drafting. (Dkt. 51, p.3); *Bergt. v. Retirement Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1145 (9th Cir. 2002). However, in *Bergt*, the Court held that the SPD should indeed be considered part of the plan. The Court stated:

> "[T]he SPD is a plan document and should be considered when interpreting an ERISA plan...Employers are required to provide participants with a copy of an SPD (not the plan master document). 29 U.S.C. § 1022(a)-(b)... Furthermore, the SPD is the 'statutorily established means of informing participants of the terms of the plan and its benefits' and the employee's primary source of information regarding employment benefits. *Pisciotta v. Teledyne Indus.*, 91 F.3d 1326, 1329 (9th Cir.1996), citing, *Alday v. Container Corp. of America*, 906 F.2d 660, 665 (11th Cir.1990). For these reasons, we follow the other courts that have held that the SPD is part of the ERISA plan. *Chiles v. Ceridian*, 95 F.3d 1505, 1511 (10th Cir.1996) (holding that "SPDs are considered part of the ERISA plan documents" and when "interpreting the terms of an ERISA plan we examine the plan documents as a whole"); *Alday v. Container Corp. of America*, 906 F.2d 660, 665-666 (11th Cir.1990)." *Id.* at 1143.

Additionally, in *Bergt*, the plan master document and the SPD were in direct conflict, one making the employee a part of the retirement plan and the other excluding him. *Id.* at 1141. Here the Wrap Document and SPD do not directly contradict each other, simply because the former may fail to incorporate the later. Where there is ambiguity between the Plan and the SPD, the SPD is held to be controlling since it is this document that ERISA requires be provided to the employee. 29 U.S.C. § 1022 (a)(1). Thus, even if the Court were to find ambiguity between the two documents, the SPD would still be controlling. Therefore, the Court finds the Wrap Document, either the 2001 or 2005 version, as well as the SPD, shall be considered the Plan governing Plaintiff's ERISA claim. As this Court has concluded that

---

[3] "Defendants" hereafter refers to Defendants collectively (Ms. Salazar, Mr. Lesselyong, and Kleinman, Lesselyong, Novak & Russell, P.C.). "Defendant Salazar" refers to Ms. Salazar individually.

the SPD is an integral part of the Plan,[4] addressing the arguments regarding which Wrap Document applies is no longer necessary.[5]

## II. Appropriate, Equitable Relief

### A. Equitable

Defendants argue that even assuming the SPD applies, Wal-Mart has not sought "appropriate equitable relief." Defendants cite *Sereboff* in support of its proposition that for relief to be considered equitable, there must be specific language in the governing plan documents creating an "equitable lien established by agreement." (Dkt. 51, p.6); *Sereboff v. Mid Atlantic Medical Services, Inc.*, 126 S.Ct. 1869, 1877 (2006). This Court agrees that to create a lien by agreement the plan must (1) specifically identify a fund, distinct from the beneficiary's general assets, from which reimbursement will be taken, and (2) specify a particular share to which the plan is entitled. *Id.* at 1875. The SPD language here specifies both the fund (recovery from the third party or insurer)[6] and the portion due the Plan (the

---

[4] As stated above, the Ninth Circuit has explicitly held that, "the SPD is a plan document and should be considered when interpreting an ERISA plan." *Bergt*, 293 F.3 1143. Therefore, whether the Wrap Document explicitly incorporates the SPD is irrelevant.

[5] The Court also finds persuasive Plaintiff's argument that as Defendant was paid out of the SPD, the only document authorizing the Plan to pay benefits, she should also be bound by the rest of the terms of the SPD which require reimbursement. (Exhibit 1, ¶ 7); (Dkt. 48, p.3). The Eighth Circuit in *Gamboa* has noted the same, stating, "[h]aving received medical benefits in accordance with the Associates' Benefits Book, we will not permit a participant to deny the corresponding responsibilities and obligations that are clearly imposed on the participant in the same document - what is good for the goose is good for the gander." *Admin. Comm. of the Wal-Mart Stores, Inc. Health and Welfare Plan v. Gamboa*, 479 F.3d 538, 545 (8th Cir. 2007).

[6] "The Plan's right to reduction, reimbursement, and subrogation applies to any funds recovered from another party, by or on behalf of the estate of any covered person." (Dkt. 46, p.4); 2005 Wrap Document, 2006 Associates' Benefits Guide.

- 11 -

amount the Plan paid out in medical benefits)[7]. Thus, the Plan is equitable and complies with *Sereboff*.

Although not binding authority, the Plan also complies with *Popowski*, the case cited by Defendants for the proposition that the Plan language does not create an equitable lien, but only a "trigger." (Dkt. 51, p.6); *Popowski v. Parrott*, 461 F.3d 1367, 1374 (11th Cir. 2006). The Court disagrees. The *Popowski* Court found the Blue Cross Blue Shield Mohawk Plan subrogation and reimbursement provision was a trigger because it "[did] not specify that [the] reimbursement be made out of any particular fund, as distinct from the beneficiary's general assets." *Id.* at 1374. As previously stated, the Plan at issue here did specify a particular fund, distinct from the beneficiary's general assets.[8] Thus, the language of the SPD is sufficient to create an equitable lien under both *Sereboff* and *Popowski*.[9]

**B.    Appropriate**

Defendants argue that reimbursement is not appropriate for the following reasons: (1) it is unfair for Wal-Mart to be made whole while Defendant was not, (2) Wal-Mart has "unclean hands," and (3) reimbursement would constitute an improper forfeiture under *Ore. & Cal. Railroad Co. v. U.S.* 35 S.Ct. 908, 919 (1915). (Dkt. 51, pp.7-8). The Court will now address each of these arguments in turn.

**1.    Basic Fairness**

---

[7] "The Plan has the right to: ...Recover or subrogate 100% of the benefits paid, or to be paid, by the Plan for covered persons."(Dkt. 46, p.3); 2005 Wrap Document, 2006 Associates' Benefits Guide.

[8] *See supra* footnote seven.

[9] Whether or not couched in terms of an "equitable lien," the Plan contains a reimbursement right, as the SPD explicitly states that the Plan has this right (*see supra* footnote eight) and this Court has found the SPD to be included in the Plan. *See* Section I of this Order.

- 12 -

Defendants argue that reimbursement is unfair because (a) Wal-Mart will be made whole while Defendant is not, (b) reimbursement is not mentioned in the ERISA statutory scheme, and (c) awarding reimbursement would be putting the interests of the Plan "far above the interests of a catastrophically injured victim." (Dkt. 51, p.8).

### a) Made-Whole Doctrine

The Court finds that reimbursement is fair because Defendant has chosen to accept money from a plan that disclaims the make-whole doctrine[10]. In the Ninth Circuit, an employee may sign away his or her make-whole right. *See Barnes v. Independent Automobile Dealers*, 64 F.3d 1389, 1395 (9th Cir. 1995) citing *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293, 1297 (7th Cir.), *cert. denied*, 510 U.S. 916 (1993). Here, Defendants have done just that as the Plan explicitly states they must reimburse the Plan "whether [they] or [their] dependants have been fully compensated for [their] injuries." (Dkt. 46, p.4); 2005 Wrap Document, 2006 Associates' Benefits Guide. Thus, Defendants are not entitled to be made whole.

### b) Reimbursement contemplated by ERISA

Defendants further argue that requiring them to repay the Plan would not be fair because reimbursement is not contemplated by ERISA. (Dkt. 49, p.24). It is true that ERISA does not address reimbursement of medical expenses paid out by a plan; however, "there is no bar to plan provisions requiring reimbursement or to demands for reimbursement." *Meek v. Standard Ins. Co.*, 41 Fed.Appx. 37, 38 (9th Cir. 2002). If the employer and employee

---

[10] Under the made-whole doctrine, if an employee has not been fully compensated for his or her injuries through his or her claim against the liable third party, the Plan may not seek reimbursement. *See Barnes v. Independent Auto. Dealers Ass'n of California Health and Welfare Benefit Plan*, 64 F.3d 1389, 1394 (9th Cir. 1995) ("It is a general equitable principle in insurance law that, absent agreement to contrary, insurer may not enforce right to subrogation until insured has been fully compensated for her injuries, that is, has been made whole").

- 13 -

agree to a reimbursement provision, as has been done here,[11] the Court will not interfere with that agreement simply because ERISA is silent on the issue. Additionally, the U.S. Supreme Court has upheld reimbursement and subrogation provisions in ERISA-governed employee benefit plans. *See FMC Corp. v. Holliday*, 498 U.S. 52 (1990) (holding that state laws may not abridge an employer's right to enforce an ERISA-governed plan's subrogation provision). Furthermore, ERISA does not mandate any minimum substantive content for benefit plans; "[e]mployers have large leeway to design disability and other welfare plans as they see fit." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003). Therefore, the fact that ERISA does not discuss reimbursement provisions does not make reimbursement provisions "unfair."

### c)  **Plan Interests**

The Court finds Defendants' third fairness argument, that awarding reimbursement puts the interests of the Plan above those of Defendants, is not a bar to reimbursement. "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). As stated in *Shaw* supra, ERISA's purpose is to promote the interests of employees in employee benefit plans; however, the employer is free to confer as many or as few benefits upon its employees through a benefit plan as it sees fit, as long as it complies with the statute. *Shaw*, 463 U.S. at 90. The creation and maintenance of a benefit plan at all is in the interest of Defendant and other employees alike. It is in the interest of both Defendant and the Plan that the Plan be reimbursed and remain soluble for future usage. Thus, reimbursement is not unfair.

### 2.  **Unclean Hands**

---

[11] The Plan, consisting of the Wrap Document and the SPD, contains a reimbursement provision. As discussed *supra*, the receipt of funds from the Plan created an equitable lien whereby Defendant agreed to repay the Plan.

- 14 -

The Court finds the "unclean hands" doctrine[12] to be inapplicable to the case at bar. Defendants argue that Wal-Mart is "tainted with inequitableness" because it seeks to divest Defendant of her inadequate recovery, based on SPD language that is not addressed in the Wrap Document and unilaterally forced on beneficiaries. (Dkt. 51, p.9); *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945). It is true that "[he] who comes into equity must come with clean hands." However, none of the activities alleged by Defendants would dirty Wal-Mart's hands regarding this matter. The "unclean hands" doctrine *does* contemplate bad intent or bad faith, neither of which has been exhibited here. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244-246 (1933). The Plan Administrator's compliance with her duties under the Plan and the governing law does not indicate bad faith. Defendant was provided a SPD, as required by law, so it is not inequitable that she should be bound by the SPD language. 29 U.S.C. § 1021(a). Furthermore, as previously noted, the creation of employee benefit plans is not mandated by law and SPD construction is left up to the employer, as long as that construction comports with ERISA. *Lockheed*, 517 U.S. at 887. As stated in both the 2001 and 2005 Wrap Documents, "the Plan is subject to amendment at any time without consent of the Participants." (Exhibit A, section 6.1). The employee is not required to be a member of the Plan nor receive Plan payouts if she disagrees with its provisions.

Defendants go on to argue that because Wal-Mart has violated the doctrine of judicial estoppel by taking opposite positions on which is the appropriate date for determination of the applicable Wrap Document, it has "unclean hands." (Dkt. 51, p.9). In *Wal-Mart v. Shank*, Wal-Mart, in its answering brief, made the same argument that Defendants make in the present case, i.e., that the Wrap Document in effect *at the time of the accident* should apply. *Administrative Committee of the Wal-Mart Stores, Inc. v. Shank*, 2006 WL 2546797

---

[12] *See* also discussion on the maxim "equity abhors a forfeiture" in Section II, B, 3 of this Order.

- 15 -

(E.D.Mo. 2006). Specifically, after arguing that the plan beneficiary was precluded from arguing that the 2001 Wrap Document applied for technical reasons, Wal-Mart stated that "even considering the argument, *the plan provisions in effect at the time of the covered event or accident are controlling*." *Cooper Tire & Rubber Co. v. St. Paul Fire & Marine Ins. Co.*, 48 F.3d 365 (8th Cir. 1995) (citing *Sturges v. Hy-Vee Employee Ben. Plan & Trust*, 991 F.2d 479, 481 (8th Cir. 1993)). (Emphasis added). It is within the Court's discretion to consider whatever facts are relevant to the inquiry. *See Keystone*, 290 U.S. at 246. As the issue of which Wrap Document applies need not be addressed, the possibility that Wal-Mart may be judicially estopped from arguing one is more applicable than the other is irrelevant. Additionally, even if Wal-Mart were judicially estopped from arguing that the 2005 Wrap Document applies, this does not constitute bad faith. The plan administrator is within his or her discretion in interpreting the Plan to apply the Plan as written. Thus, it is unlikely that Wal-Mart would meet the three factor test for judicial estoppel and Wal-Mart does not come before this Court with unclean hands. *See Abercrombie & Fitch, Co. v. Moose Creek, Inc.*, 486 F.3d 629 (9th Cir. 2007).[13]

### 3. Forfeiture

Requiring Defendants to reimburse the Plan does not constitute an impermissible forfeiture. The maxim, "equity abhors a forfeiture" is not a rule of law, but an ethical ideal that if a default can be compensated in other ways, the debtor's property should be

---

[13] Several factors typically inform the decision of whether to apply the doctrine of judicial estoppel in a particular case: whether the party's later position is clearly inconsistent with its earlier position, whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled, and whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007).

preserved.[14] *See* 1 Dan B. Dobbs, The Law of Remedies, §2.3(4). Here, the default can only properly be compensated through payment out of Defendant's settlement because the Plan created an equitable lien upon Defendants' settlement proceeds.[15] Thus, the $64,386.58 at issue actually belongs to the Plan and as such can not constitute a forfeiture by Defendants.

### 4. Unconstitutional "Taking"

As neither Wal-Mart, nor the Plan, are government entities, they are incapable of violating the Fifth Amendment. The Fifth Amendment provides that the government can not take a person's property without due process of law. U.S. Const., Amend. 5. Although ERISA creates guidelines for employee benefit plans, it does not convey governmental status upon these plans. 29 U.S.C. § 1003(b). Thus, the Plan does not seek to accomplish an unconstitutional "taking"by requiring Defendants to comply with Plan provisions and reimburse the Plan, but, as previously discussed, creates an equitable lien on Defendant's settlement proceeds.[16]

### C. Reduction on a Pro-Rata Basis

Defendants are not entitled to a reduction in the amount they are required to reimburse the Plan as the case they rely upon, *Arkansas Dept. Of Health & Human Services v. Ahlborn*, 126 S.Ct. 1752 (2006), has no application to ERISA disputes. *Ahlborn* held that the Arkansas statute imposing a lien on Medicaid recipient's settlement proceeds violated federal Medicaid law's anti-lien provision. *Id.* at 1763. Here the Plan's reimbursement provision violates neither ERISA, the law under which the Plan was created, nor any other applicable statute. While Medicaid may not permit liens against settlement proceeds, ERISA does

---

[14] Defendants' previously quoted maxim, "the unclean hands doctrine, 'closes the doors of equity to one tainted with bad faith'" is also an ethical ideal rather than a rule of law. (Dkt. 49, p.26).

[15] *See* equitable lien discussion, Section II, A of this Order.

[16] *See* equitable lien discussion, Section II, A of this Order.

- 17 -

because it does not forbid them, and as such, the Defendants' are not entitled to a reduction in the amount they are required to reimburse the Plan

Without a doubt the Plan creates a right of recovery from Defendant Salazar's settlement. Therefore, this Court finds Defendants must reimburse the Plan in the full amount of $64.386.58 from the IOLTA trust account, managed by Mr. Lesselyong, which has been set aside for this purpose. What is absolutely clear, however, is that Defendant sustained catastrophically life-changing injuries for which she received limited recovery.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Administrative Committee for the Wal-Mart Stores, Inc. Associates' Health & Welfare Plan's Motion for Partial Summary Judgment is **GRANTED**. (Dkt. 44).

**IT IS FURTHER ORDERED** that Defendants Alice Salazar; Frank Lesselyong; and Kleinman, Lesselyong, Novak & Russell's Cross-Motion for Summary Judgment is **DENIED** (Dkt. 49).

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment in favor of Plaintiff and against Defendants.

DATED this 20th day of August, 2007.

_____
Stephen M. McNamee
United States District Judge